**Michele CARTER, as next friend of M.C., on behalf of herself and those similarly situated, Plaintiff,**

v.

**Jesse DOYLE, in his official capacity as Superintendent of the Juvenile Temporary Detention Center for Cook County, and Richard Devine, in his official capacity as the State's Attorney of Cook County, Defendants.**

No. 99C 2589.

United States District Court,
N.D. Illinois,
Eastern Division.

March 27, 2000.

853

Mark Steven Mester, Paula W. Render, William Paul Koenig, Latham & Watkins, Chicago, IL, Ian Howard Fisher, Schopf & Weiss, Chicago, IL, for Plaintiff.

Patrick Malone Blanchard, Cook County State's Attorney, Paul Anthony Castiglione, Cook County State's Attorney, Chicago, IL, for Defendants.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

M.C. is 14 years old and a resident of Chicago, Illinois. On April 5, 1999, he was arrested at a Chicago public school, charged with criminal trespass to land, and detained in custody at the Juvenile Temporary Detention Center of Cook County, of which defendant Jesse Doyle serves as superintendent. Because the state sought to hold M.C. in custody until his delinquency hearing, the young suspect was brought before the juvenile court the following day for a detention hearing pursuant to 705 ILCS 405/5-501.

Under Illinois law a juvenile court may order a minor detained pending his or her delinquency hearing if the state establishes (a) probable cause to believe the minor is delinquent[1] and (b) an immediate and urgent necessity for the protection of the minor or other person or property. *See* 705 ILCS 405/5-501(2).[2] Under the

amendments imposed by the Juvenile Justice Reform Act of 1998 (the "JJRA"), the juvenile court may consider, *inter alia,* "evidence by way of proffer based upon reliable information offered by the State or the minor." *Id.; see also* 405/5-501. According to plaintiff's complaint, once these amendments went into effect on January 1, 1999, the juvenile court has repeatedly found probable cause of delinquency based solely upon a state's attorney's unsworn proffer of information.

Plaintiff Michelle Carter, M.C.'s mother, cites the circumstances surrounding her son's detention as an example of this practice. Only minutes before M.C.'s detention hearing the assistant state's attorney served M.C.'s yet-to-be appointed public defender with a copy of the police report concerning M.C.'s arrest. At the hearing, the assistant state's attorney did not offer any evidence or any information under oath to demonstrate probable cause of delinquency, but rather proffered to the juvenile court "facts intended to establish" probable cause (cplt.¶ 20). This proffer consisted of reading to the juvenile court portions of a police report.[3] Based solely upon the proffer, the juvenile court found

---

**1.** A "delinquent minor" is a minor who has committed, or attempted to commit, a crime. *See* 705 ILCS 405/5-105(3).

**2.** Section 705 ILCS 405/5-501 (emphasis added) provides in relevant part:

> 5-501. Detention or shelter care hearing.
>
> At the appearance of the minor before the court at the detention or shelter care hearing, the court shall receive all relevant information and evidence, including affidavits concerning the allegations made in the petition. *Evidence used by the court in its findings or stated in or offered in connection with this Section may be by way of proffer based on reliable information offered by the State or minor.* All evidence shall be admissible if it is relevant and reliable regardless of whether it would be admissible under the rules of evidence applicable at a trial. No hearing may be held unless the minor is represented by counsel.
>
> (1) If the court finds that there is not probable cause to believe that the minor is a

delinquent minor it shall release the minor and dismiss the petition.

> (2) If the court finds that there is probable cause to believe that the minor is a delinquent minor, the minor, his or her parent, guardian, custodian and other persons able to give relevant testimony may be examined before the court. *The court may also consider any evidence by way of proffer based upon reliable information offered by the State or the minor.* All evidence, including affidavits, shall be admissible if it is relevant and reliable regardless of whether it would be admissible under the rules of evidence applicable at trial. After such evidence is presented, the court may enter an order that the minor shall be released upon the request of a parent, guardian or legal custodian if the parent, guardian or custodian appears to take custody.

**3.** Upon information and belief, plaintiff alleges that police officers often submit draft police reports to the state's attorneys, who then comment upon the drafts and sometimes rewrite them in final form (cplt.¶ 15).

probable cause to believe M.C. had committed a crime. The court further found the existence of an immediate and urgent need to detain M.C. pending trial. By the court's order, M.C. was detained in the Juvenile Temporary Detention Center of Cook County until his trial.

■ Plaintiff, as next friend of M.C., complains that this practice (and the statute which permits it) violates the Fourth and Fourteenth Amendments to the United States Constitution.[4] She brings this class action pursuant to 42 U.S.C. § 1983, seeking declaratory and injunctive relief on behalf of herself and those similarly situated.[5] Defendants have moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing, *inter alia*, that the court lacks subject matter jurisdiction pursuant to either the *Younger* abstention doctrine[6] or the *Rooker–Feldman*[7] doctrine, that plaintiff lacks standing to seek injunctive relief with respect to future detention hearings to which he is not a party, and that, in any case, the statute and practice are constitutional. Fi-nally, defendants argue that Superintendent Doyle should be dismissed from the action because he is not responsible for enforcing Section 5–501.

### Standards of Review

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the court must accept as true each of the allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir.1995). The motion should not be granted unless it appears that the plaintiff can prove no set of facts entitling him or her to the relief sought in the complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Additionally, in ruling on a challenge to a federal court's subject matter jurisdiction pursuant to Rule 12(b)(1),[8] courts are authorized to consider materials outside the pleadings without converting the motion into one for summary judgment. *English v. Cowell,* 10

---

4. The complaint also alleges a violation of the Due Process Clause of the Fifth Amendment but, as defendants note, no federal action is alleged. Although many of the provisions in the Fifth Amendment have been made applicable to the states through the doctrine of selective incorporation, *see, e.g., Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (privilege against self incrimination held applicable to states); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (Double Jeopardy Clause); *Chicago B. & Q. R. Co. v. City of Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897) (Just Compensation Clause); the Due Process Clause is not one of them. Plaintiff's Fifth Amendment claim is dismissed.

5. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

6. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

7. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

8. Because a motion to dismiss for lack of subject matter jurisdiction based on abstention does not fit neatly into either of the two types of jurisdictional attacks generally raised under Rule 12(b)(1)—the challenge is neither to the facial insufficiency of the complaint or the factual basis pleaded in the complaint— courts have allowed a *Younger* abstention challenge to be raised in a 12(b)(6) motion, *see, e.g., Jonathan Club v. City of Los Angeles,* 680 F.Supp. 1405 (C.D.Cal.1988); or a 12(b)(1) motion, *see, e.g., Van Breeman v. Zollar,* 1997 WL 124266 (N.D.Ill.); *Doe v. Cook County,* 1999 WL 1069244 (N.D.Ill.); or both, *see Alleghany Corp. v. Eakin,* 712 F.Supp. 716 (S.D.Ind.1989). *See also Majors v. Engelbrecht,* 149 F.3d 709, 711 (7th Cir.1998) (declining to comment on court's resolution of defendant's 12(b)(1) abstention motion under 12(b)(6)).

F.3d 434, 437 (7th Cir.1993); *Ezekiel*, 66 F.3d at 897.

*Analysis*

### I. *Abstention*

Defendants first argue that the *Younger* abstention doctrine bars the relief which plaintiff requests and prohibits the exercise of federal jurisdiction in this matter. They argue that M.C. may not use the federal court to litigate his defenses in a pending state matter, and point to *Nelson v. Murphy*, 44 F.3d 497 (7th Cir.1995), in which the court rejected an attempt by dissatisfied state court litigants (mental health patients challenging restricted treatment plans) to move adjudication of their case to federal court.

■■■ *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), firmly established the principle that federal courts must not interfere with pending state criminal (and civil adjudicatory) proceedings absent extraordinary circumstances. *Younger* serves as a cautionary reminder to federal courts that while we are "anxious ... to vindicate and protect federal rights and federal interests, ... [we must] endeavor[ ] to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44, 91 S.Ct. 746. Under the *Younger* doctrine abstention is required if (1) there are pending state judicial proceedings; (2) the state proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions. *Trust & Investment Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir.1994), *citing Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). When these criteria are met, "a district court must dismiss the federal action ... [and] there is no discretion to grant injunctive relief." *Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Certainly, juvenile detention proceedings implicate important state interests, among them the protection of the best interests of the minor and the safeguarding of the community, and plaintiff does not argue otherwise. She argues instead that neither the first or third prerequisites for *Younger* abstention are present. We agree.

■■■ In her responsive brief plaintiff clarifies that M.C.'s detention hearing has already concluded: one day after the federal complaint was filed M.C. entered into a plea agreement and was found delinquent (plf. response at 9 & n. 8; cplt. ¶ 21). Consequently, we need not abstain to avoid interfering with ongoing state proceedings. This case is thus distinguishable from *Liedel v. Juvenile Court of Madison County, Alabama*, 891 F.2d 1542 (11th Cir. 1990), cited by defendants, in which plaintiffs sought to enjoin a state juvenile court from issuing any further orders against them.

■■■ Alternatively, defendants argue that if M.C.'s juvenile court trial has concluded and a final judgment has been entered, the *Rooker–Feldman* doctrine[9] operates to bar this court from reviewing the juvenile court's acceptance of the state's proffer of facts during M.C.'s detention hearing. This argument, too, is unavailing

9. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Supreme Court held that it was the only federal court authorized to reverse or modify an erroneous state court judgment. In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Court held that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." "[T]aken together, *Rooker* and *Feld-* *man* stand for the proposition that 'lower federal courts lack jurisdiction to engage in appellate review of state-court determinations.'" *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir.1993) (citation omitted), (*cert. denied*, 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994)). *See also David B. v. McDonald*, 156 F.3d 780, 784 (7th Cir.1998) ("Inferior federal courts are not authorized to review the decisions of the Juvenile Court.")

on these facts. As the Seventh Circuit recently explained, the pivotal inquiry under *Rooker–Feldman* is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim. *Long v. Shorebank Development Corp.*, 182 F.3d 548 (7th Cir.1999). Plaintiff does not seek to relitigate M.C.'s guilty plea or any necessary component of the state judgment. In other words, plaintiff is not attempting to "appeal" the state case through the back door of the federal courts. Plaintiff instead challenges the pre-trial detention procedures as an independent violation of M.C.'s due process rights. Neither doctrine, *Rooker–Feldman* or *Younger*, bars federal jurisdiction over plaintiff's individual claim.

■ But once plaintiff stipulates that the state case has concluded, we must consider whether plaintiff has standing to seek declaratory and injunctive relief in which M.C. has no "personal stake." The case or controversy requirement imposed by Article III, § 2, of the Constitution "'subsists through all stages of federal judicial proceedings, trial and appellate.... The parties must continue to have a 'personal stake in the outcome' of the lawsuit.'" *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), *quoting Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer*, 523 U.S. at 7, 118 S.Ct. 978, *quoting Lewis*, 494 U.S. at 477, 110 S.Ct. 1249.

■ Plaintiff argues that two exceptions to the general rule are applicable here: the first governs claims that are based on transitory harms, *see, e.g., Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and the second rests on a fiction designed to allow representatives to pursue claims on behalf of a plaintiff class,

*see, e.g., Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). She is right on both. The duration of the injury alleged is, by statutory mandate, fleeting. As defendants point out in their brief, a minor ordered to remain in detention is entitled to trial within 30 calendar days after the date of the order or the earliest possible date, subject to the notice requirements of 705 ILCS 405/5–525, and with limited exceptions (defs' mem. at 12, *citing* 705 ILCS 405/5–605(4)). Consequently, before any due process challenge to his or her detention could be adjudicated and appealed through the courts, the "injury" would have concluded. This is a paradigmatic example of an injury "capable of repetition, yet evading review." *See Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Sosna*, 419 U.S. at 400–401, 95 S.Ct. 553, (*quoting Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972)).

■ The other exception exists for class actions in which the named plaintiff's claim has become moot, but identical injuries suffered by the class continue. *See Sosna, supra; Gerstein, supra; U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). In *Sosna*, for example, the plaintiff brought a class action challenging an Iowa law requiring residence in the state for one year as a condition for divorce. The district court certified the class but ruled against plaintiff on the merits of her constitutional challenge. While the appeal was pending, however, plaintiff satisfied the one-year requirement and her petition for dissolution of the marriage was granted. The court of appeals dismissed the appeal as moot. Writing for the Court, Justice Rehnquist remanded the case to the court of appeals, noting that while petitioner's injury had been resolved, the case "remains very much alive for the class of persons she has been certified to represent." *Sosna*, 419 U.S. at 401, 95 S.Ct. 553. Importantly, and contrary to defendants' assertion *(see* defs' sur-response at

3), the Court later clarified that *Sosna* should not be read to suggest that the timing of class certification is important, especially where the injury is inherently transitory. *See Geraghty*, 445 U.S. at 398 & n. 6, 100 S.Ct. 1202.[10] So long as plaintiff's injury is not moot at the time her federal complaint is filed, subsequent resolution of her injury will not moot her claim for the purposes of her standing to pursue the class claims.

We agree with plaintiff that *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), is controlling; the case, in which two Florida prisoners brought a class action challenging their pre-trial detention without a reliable judicial determination of probable cause, is remarkably similar to Michelle Carter's. In a lengthy footnote, the Court rejected the same argument that defendants raise here:

> At oral argument, counsel informed us that the named respondents have been convicted. Their pretrial detention therefore has ended. This case belongs, however, to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class.... Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly "capable of repetition, yet evading review." ....

*Gerstein,* 420 U.S. at 111 n. 11, 95 S.Ct. 854; *accord Schall v. Martin,* 467 U.S. 253, 257 n. 4, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984).

Undaunted by *Gerstein,* defendants insist that other controlling precedent prohibits plaintiff from seeking injunctive relief regarding future preliminary detention hearings in juvenile court. In *City of L.A. v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Court held that a choke-hold victim lacked standing to seek injunctive relief regarding future police use of choke-holds because his interest in such conduct was merely hypothetical. Lyons' complaint, however, was not structured as a class action. His argument, rather, was based on the possibility that he might again be arrested and subject to an unlawful, and subsequently discontinued, police practice. *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), *was* a class action, but there the class sought to enjoin future *discriminatory* enforcement of the criminal and sentencing laws and alleged a truly "hypothetical" injury requiring a number of speculative inferences. Here, the alleged "injury"—pretrial detention absent sworn evidence—is not in dispute, nor is the likelihood that future minor suspects will be subject to such detention. Rather, the crux of this matter is whether such detention violates the federal Constitution. Defendants say no, plaintiff says yes, and *O'Shea,* therefore, is inapposite.

■ Finally, defendants cite *Palmer v. City of Chicago,* 755 F.2d 560 (7th Cir. 1985), in which two groups of plaintiffs sought an order restraining the Chicago police department from continuing its alleged practice of concealing exculpatory evidence contained in "street files." The court held that *O'Shea* Article III problems precluded jurisdiction over those plaintiffs who had already been convicted and sought standing on the theory that they might again suffer from the alleged practice. As for those plaintiffs who were currently charged, the court concluded that they were barred from proceeding in federal court under the *Younger* doctrine. Unlike plaintiff's class action claims here, however, the claim and relief sought in

---

**10.** Of course, should the named plaintiff's claim become moot and class certification be denied, the case would have to be dismissed as moot.

*Palmer* concerned evidentiary issues that would have affected the outcome of pending trials. Plaintiff argues that a federal injunction here would not disrupt, affect, or undo the final judgments in any case before the juvenile court. It would, obviously, alter the way at least some pre-trial detention hearings are held, but that does not seem to run afoul of *Younger* concerns. *See Gerstein*, 420 U.S. at 108 n. 9, 95 S.Ct. 854 (observing that the district court's grant of injunctive relief did not violate *Younger* principles, even with respect to those currently in detention, because "the injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution"); *Mudd v. Busse*, 437 F.Supp. 505 (N.D.Ind. 1977) (holding challenge by pretrial detainees to bail procedures barred by *Younger*, but distinguishing *Gerstein* because the plaintiffs did not "allege that they [were] being detained without a proper determination of probable cause that they had committed a crime"). Even if we were to find that the challenged practice violated the Fourth Amendment, the final outcome of pending or completed delinquency hearings would be unaffected. Under the *Ker–Frisbie* doctrine, an illegal arrest or detention does not void a subsequent conviction. *See Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886).

■ The most persuasive reason for the exercise of federal jurisdiction, however, is the likelihood that these claims have no other avenue for review. *See Trust & Investment Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 n. 6 (7th Cir.1994) (confirming "the overriding rule that abstention under *Younger* is inappropriate whenever the state tribunal is unable to adjudicate the controversy before it in accordance with the requirements of due process"). Certainly, a minor accused of delinquency can lodge an objection to use of the proffer before the juvenile court.[11] Indeed, defendant has provided us with transcripts of juvenile court proceedings concerning two such objections. *See* defs' mem., Ex. A (containing excerpts from *In re M.G.*, 99 JD 450, and *In re L.J.*, 99 JD 712) and Ex. B. (containing excerpts from *In re T.C.*, 99 JD 737). If anything, however, these transcripts simply confirm the confusion surrounding the appropriate procedure for constitutional challenges to the sufficiency of the state's proffer and the difficulty of obtaining appellate review before the issue is mooted by the delinquency hearing. *See, e.g., In re T.C.*, at 3–6.

■ Were the nature of the injury less "transitory" (*see* def's mem.at 13), this might be an appropriate situation for *Pullman* abstention, which applies where "the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law."[12] *International College of Surgeons (ICS) v. City of Chicago*, 153 F.3d 356, 365 (7th Cir.1998), *quoting Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–17, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). But absent some assurance that plaintiff's claim will or could be heard in a timely manner by a competent

---

11. Defendants also point to the availability of a motion to vacate a detention order pursuant to 705 ILCS 405/5–501(7), as well as the opportunity to certify any constitutional issues for interlocutory appeal under Illinois Supreme Court Rule 308. We note first that 5–501(7) specifies the four permissible grounds for a motion to vacate, and a constitutional challenge to the statute is not among them. Furthermore, interlocutory appeals are unlikely to reach fruition before the 30–day detention period has expired. Rule 308, for example, sets a briefing schedule of 14 days for the application, and another 14 days for the adverse party to file an answer. If leave to appeal is allowed, a new briefing schedule is set pursuant to the schedule contained in Ill.S.Ct.Rule 341: 35 days for appellant, 35 days for appellee, and 14 more for a reply.

12. As we indicate below, we believe the statute is not altogether clear regarding the role of the proffer.

state tribunal, we conclude that it is appropriate to exercise our subject matter jurisdiction over this continuing controversy, at least until we rule on class certification. *Accord Doe v. Cook County,* 1999 WL 1069244, at *2 (N.D.Ill. Nov.22, 1999) (rejecting *Younger* abstention challenge to class action seeking declaratory and injunctive relief against certain practices and conditions at the Cook County Juvenile Detention Center).

## II. *Constitutional Determination of "Probable Cause"*

Which brings us to the question as to whether plaintiff's complaint states a claim under the Fourth and Fourteenth Amendments. We reiterate that for the purpose of this motion we must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in favor of the plaintiff. *Ezekiel v. Michel, supra.*

 Under the Fourth Amendment to the United States Constitution, individuals enjoy "The right ... to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV, cl. 1. The Amendment also provides:

> [N]o Warrants shall issue, but *upon probable cause, supported by Oath or affirmation,* and particularly describing the place to be searched, and the person or things to be seized.

U.S. Const. amend. IV, cl. 2 (emphasis added). Pursuant to these guarantees, "a fair and reliable determination of probable cause [is] a condition for any significant pretrial restraint of liberty." *Baker v. McCollan,* 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The protections afforded by these requirements apply to the states just as equally as they do to the federal government. *Mapp v. Ohio,* 367 U.S. 643, 655–56, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Baker,* 443 U.S. at 142, 99 S.Ct. 2689. However, not all constitutional safeguards accorded adults in criminal proceedings are applicable to juvenile pro-

ceedings. *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (holding that trial by jury in adjudicative stage of state juvenile court delinquency proceedings is not constitutionally required).

With these principles in mind, we turn to the two distinct questions presented by this case: (1) does the Fourth Amendment allow a judicial determination of probable cause for pretrial detention (after a warrantless arrest), based solely upon an unsworn proffer by the state's attorney, and, if it does not, (2) to what extent do the protections of the Fourth Amendment apply to juvenile detention proceedings pursuant to 705 ILCS 405/5–501(2)?

 The first question is more straightforward and better suited for resolution at this juncture because of the clarity of the constitutional mandate and the Supreme Court's clear instructions as to its effectuation. *Gerstein* leaves no doubt but that there must be a neutral, judicial finding of probable cause as a prerequisite to an extended restraint of liberty following arrest. *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The standard for a finding of probable cause for detention is the same as for arrest, if not higher. *Id.* at 120, 95 S.Ct. 854; *Baker,* 443 U.S. at 143, 99 S.Ct. 2689. This is because "the consequences of prolonged detention may be more serious than the interference occasioned by arrest," while the practical difficulties of complying with procedural safeguards are lessened once the suspect is in custody. *Gerstein,* 420 U.S. at 114, 95 S.Ct. 854.

 The Fourth Amendment requirement that arrest warrants be based "upon probable cause, *supported by Oath or affirmation* " may be satisfied by an indictment returned by a grand jury, but not by the mere filing of criminal charges in an unsworn information signed by the prosecutor. *Id.,* at 117 n. 19 & n. 20, 95 S.Ct. 854; *Kalina v. Fletcher,* 522 U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). So

long as probable cause is decided by a neutral magistrate, the Court has allowed "informal methods of proof," including hearsay and written testimony provided in a non-adversary proceeding. *Gerstein,* at 120, 95 S.Ct. 854. But the cases also indicate that a finding of probable cause requires the introduction of *evidence,* and "[a] proffer is not evidence, ipso facto." *United States v. Reed,* 114 F.3d 1067, 1070 (10th Cir.1997). As the Supreme Court indicated in *Kalina v. Fletcher:*

No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required "Oath or affirmation" is a lawyer, the only function that she performs in giving sworn testimony is that of a witness.

522 U.S. 118, 130–31, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). In *Kalina,* the Court allowed that the prosecutor may enter the sworn statement herself,[13] but found that she is not entitled to absolute immunity for conduct while performing that function. *Id.* Although it may seem like splitting hairs to allow a recitation of facts to support a finding of probable cause only if the prosecutor does it with her hand up, such a requirement will surely elevate the level of care and judgment exercised by a state's attorney seeking to keep a suspect in detention until trial.

 It seems clear that probable cause sufficient for an extended restraint of liberty following a warrantless arrest may not be determined solely on the basis of an unsworn proffer by the state's attorney consistent with the Fourth Amendment.[14] We are left, however, to determine the applicability of these requirements to detention proceedings governed by the Juvenile Justice Reform Act. In *A.J. by L.B. v. Kierst,* 56 F.3d 849 (8th Cir.1995), the Eighth Circuit sought to translate adult due process protections into the context of juvenile detention proceedings:

In applying the due process standard to juveniles, we cannot ignore the reality that assessments of juvenile conditions of confinement are necessarily different from those relevant to assessments of adult conditions of confinement.... Juveniles subject to pretrial detention have "not as yet had a 'judicial determination of probable cause which the Fourth Amendment requires as a prerequisite to extended restraint of liberty following arrest[,]'" *United States ex rel. Martin v. Strasburg,* 513 F.Supp. 691, 714 (S.D.N.Y.1981) (quoting *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)), *aff'd,* 689 F.2d 365 (2d Cir.1982), *rev'd sub nom. Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984); are, in some instances, before the court on charges in unverified petitions, *e.g.,* delinquency petitions filed on information and belief, *id.;* and are in a system whose purpose is rehabilitative, not penal, in nature.... In addition, juveniles are frequently detained for reasons entirely separate from those associated with adjudication of charges. Some are detained as a result of neglect or abusive home environments and are held in protective cus-

---

**13.** The Court expressed its disapproval of the practice, however, and highlighted professional codes of conduct generally prohibiting lawyers from serving as an advocate at a trial in which the lawyer is a necessary witness. *Kalina,* 522 U.S. at 130 & n. 17, 118 S.Ct. 502.

**14.** We note that courts have allowed the government to proceed under the Bail Reform Act, 18 U.S.C. § 3142(e), by proffer alone. *See U.S. v. Smith,* 79 F.3d 1208, 1210

(D.C.Cir.1996) (collecting cases). But again these are proceedings subsequent to a probable cause determination either by sworn evidence or grand jury indictment. *See U.S. v. Salerno,* 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *United States v. Hurtado,* 779 F.2d 1467, 1479 (11th Cir.1985) (purpose of pretrial detention hearing is not to "rehash ... probable cause" but to provide opportunity for detainee to show no risk of flight or danger to community).

tody, e.g., are "status offenders"; some are runaways; some are simply undisciplined. For these reasons, we conclude that, as a general matter, the due process standard applied to juvenile pretrial detainees should be more liberally construed than that applied to adult detainees.

*Kierst*, 56 F.3d at 854 (citations omitted). The passage reveals the court's assumption that *Gerstein*'s Fourth Amendment instructions are applicable in the juvenile context, but also illuminates the variety of circumstances in which juveniles may come to be detained. The Eighth Circuit was examining conditions in a multi-purpose juvenile detention center. The question here is narrower, in that we are only concerned with detention based on probable cause to believe that the minor has committed, or attempted to commit, a crime. 705 ILCS 405/5–105(3).

*Schall v. Martin*, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984), cited by defendants, is also instructive, but not dispositive of the issue, for in both *Schall* and its companion "adult" case, *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), a judicial finding of probable cause based on *evidence* was a necessary predicate for pre-trial detention. In *Schall*, plaintiffs challenged New York's juvenile pre-trial detention statute on the grounds that it violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment; they did not bring a Fourth Amendment claim. The Court reiterated its earlier holding that a juvenile's liberty interest may be subordinated to the state's *parens patriae* interest in preserving and promoting the child's welfare. *Schall*, 467 U.S. at 265, 263, 104 S.Ct. 2403, *citing Santosky v. Kramer*, 455 U.S. 745,

102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). If the purpose of the detention statute was regulatory and not punitive, and the statute served a legitimate state objective, detention was constitutional so long as the procedural protections afforded the pretrial detainee were adequate.

Accordingly, the Court provided an exhaustive review of the statute's procedural provisions, *id.* at 274–78, 104 S.Ct. 2403, observing that "in many respects, [New York's Family Court Act] provides far more pre-detention protection for juveniles than we found to be constitutionally required for a probable cause determination for adults in *Gerstein*." Among the procedural safeguards discussed by the Court was the fact that delinquency proceedings are initiated by a *sworn* [15] "delinquency petition" offered by the "presentment agency."

The petition must contain, *inter alia*, a precise statement of each crime charged

> and factual allegations which "clearly apprise" the juvenile of the conduct which is the subject of the accusation. § 311.1 A petition is not deemed sufficient unless the allegations of the factual part of the petition, together with those of any supporting depositions which may accompany it, provide reasonable cause to believe that the juvenile committed the crime or crimes charged. § 311.2(2). Also, nonhearsay allegations in the petition and supporting deposition must establish, if true, every element of each crime charged and the juvenile's commission thereof. § 311.2(3). The sufficiency of a petition may be tested by filing a motion to dismiss under § 315.1.

---

15. The current version of the delinquency petition requires the following notarized "agency verification":

_____, being duly sworn, deposes and says: That (s)he is the _____ of _____, an agency authorized to originate the above-entitled proceeding, and is acquainted with the facts

and circumstances therein; that (s)he has read the foregoing and knows the contents thereof; that the same is true to (his)(her) own knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters (s)he believes it to be true.

(MV) N.Y. MFL FORMS § 24:20,

*Schall,* 467 U.S. at 258 n. 6, 104 S.Ct. 2403. Given that a sworn petition was a predicate for detention, the Court's ultimate holding (that pre-trial detention on the basis of a "serious risk" that the accused would commit a crime before the return date was constitutional) does not finally answer our question as to whether the proffer procedure is constitutional. It does suggest, however, that plaintiff has sufficiently stated a claim upon which relief may be granted.

Of course, the nature of any relief will depend upon whether we ultimately conclude that the statute as drafted actually permits the practice of which plaintiff complains. Both parties have included information in their briefs that suggests that the JJRA was intended "To provide due process, as required by the Constitutions of the United States and the State of Illinois, through which each juvenile offender and all other interested parties are assured fair hearings at which legal rights are recognized and enforced." 705 ILCS 405/5–101(1)(d). Plaintiff cites to a portion of the legislative history, for example, which suggests that a co-sponsor of the JJRA believed that a proffer was "similar to a preliminary hearing where you can just put on an affidavit instead of have [sic] a police officer" (plf.'s surreply at 2 & Ex. A, *quoting* State of Illinois 90th General Assembly House of Representatives Transcription Debate, 84th Legislative Day at 20 (Jan. 27, 1988)). One of the statutory provisions in question states that *"Evidence* used by the court in its findings or stated in or offered in connection with this Section may be by way of proffer based on reliable information offered by the State or minor." 705 ILCS 405/5–501 (emphasis added). But, as we have indicated, a proffer is not evidence.

■ We suspect that the drafters did not envision the elimination of evidence from pre-trial detention hearings, but rather intended that the proffer be available to supplement or organize the evidentiary material before the juvenile court. Or perhaps they sought to allow written affidavits to be presented rather than requiring live witnesses. We defer resolution of this issue, however, until such time as a class has been appropriately certified. At this juncture we merely conclude that, taking all allegations of the complaint as true, plaintiff has sufficiently stated a claim under 42 U.S.C. § 1983 that the proffer-only practice, as she alleges it, violates the Fourth Amendment and that the statute which authorizes it is, therefore, facially unconstitutional.

Some have suggested that since the Fourth Amendment standard for unreasonable searches and seizures is more specific, a seizure or detention that passes muster under the Fourth Amendment also satisfies the requirements of the Due Process Clause of the Fourteenth Amendment. *See McKinney v. George,* 726 F.2d 1183, 1186–87 (7th Cir.1984); 68 Am.Jur.2d Searches and Seizures § 3 (1993). The logical corollary of that principle would mean that if plaintiff has stated a claim under the Fourth Amendment, she has also stated a claim under the Fourteenth. Analysis of the claim under the Fourteenth Amendment requires a slight rephrasing: Is a judicial finding of probable cause *per se* "unfair" or "unreliable" if it is made solely on the basis of an unsworn proffer? *See, e.g., Schall,* 467 U.S. at 263, 104 S.Ct. 2403 (noting that the Due Process Clause requires "fundamental fairness" in juvenile proceedings). But, again, we defer further comment on the merits until we confirm our subject matter jurisdiction over a class of individuals subject to such detention.

### III. *Property Parties to the Litigation*

Finally, defendants argue that Superintendent Doyle should be dismissed from the action because he is not responsible for enforcing Section 5–501. We do not read *David B. v. McDonald,* 156 F.3d at 782–83, as mandating Doyle's dismissal as an improper party to the litigation. As superintendent, he is responsible for the detention of individuals, arguably, without probable

cause. For the time being we deny the motion to dismiss him from the lawsuit.

### Conclusion

For the foregoing reasons, defendants' motion to dismiss is denied, with the exception of plaintiff's claims under the Fifth Amendment, which are hereby dismissed. The parties are ordered to brief the class certification issues by April 10, 2000.[16]

---

**16.** It would also be helpful if the briefs discussed the implications, if any, of the Illinois Supreme Court's decision in *People v. Cervantes*, 189 Ill.2d 80, 723 N.E.2d 265, 243 Ill.Dec. 233 (Ill.1999), *rehearing denie* d (Jan 31, 2000), and the status of Article V of the Juvenile Court Act of 1987. *See also* S.1360, 91st Gen. Ass., 1999–00 Reg. Sess.